**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stanley Lee Morris, ) | No. CV-11-0696-PHX-JAT |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff, Stanley Morris, appeals the Commissioner of Social Security's (the "Commissioner") denial of disability benefits. The Court now rules on his appeal (Doc. 11).

**I.    BACKGROUND**[1]

On April 16, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II as well as an application for supplemental security income under Title XVI. (Tr. 11). Plaintiff alleged a disability onset date of February 1, 2007. These applications were denied on June 12, 2008 and again on September 4, 2008. *Id.* In September of 2008, Morris requested a hearing, which occurred on October 14, 2009. *Id.*

On November 13, 2009, Administrative Law Judge Wojciechowski (hereafter the "ALJ")

---

[1] This statement of facts should by no means be considered exhaustive. The record before the Court is 452 pages. This statement is simply a summary of the pertinent procedural facts of this case. Plaintiff's medical history can be found in the record. (Doc. 10-1 to 10-18).

ruled, based on that hearing and a review of the evidence, that Morris was not at any point "disabled under sections 216(i) and 223(d) of the Social Security Act." *Id.* Plaintiff appealed to this Court. (Doc. 11).

## II. LEGAL STANDARDS

### A. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). In doing so, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted). A district court may only reverse or remand a determination by an ALJ on the basis of error if that error was not "harmless." *Batson*, 359 F.3d at 1197. An error by an ALJ is harmless when it "does not negate the validity of the ALJ's ultimate conclusion." *Id.*

### B. Disability

To qualify for disability benefits under the Social Security Act, a plaintiff must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

### C. Five-Step Evaulation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The plaintiff bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. 20 C.F.R. § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the

impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). In determining whether a claimant meets a listed impairment, an ALJ needs more evidence than solely a diagnosis of a listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). An ALJ must support a diagnosis with findings that support a listing of that impairment. *Id.* In order to equal a listing, the claimant must show that "[m]edical equivalence will be found 'if the medical findings are at least equal in severity and duration to the listed findings.'" *Id.* (internal citation omitted). Additionally, "[e]quivalence is determined on the basis of a comparison between the 'symptoms, signs and laboratory findings' about the claimant's impairment as evidenced by the medical records 'with the medical criteria shown with the listed impairment.'" *Id.* at 176. If the claimant meets or equals a listed impairment, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). A claimant's "residual functional capacity" is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving that the

1 claimant can perform other work. *Reddick*, 157 F.3d at 721.

2 In evaluating the claimant's disability under this five-step process, the ALJ must
3 consider all evidence in the case record. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1520b.
4 This includes medical opinions, records, self-reported symptoms, and third-party reporting.
5 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1529; SSR 06-3p.

### III.  ANALYSIS

Plaintiff argues that the ALJ failed to (1) properly evaluate whether Plaintiff's impairments met or equaled a listed impairment, (2) properly weigh third party statements, (3) properly weigh subjective complaint reporting, (4) properly weigh medical source opinion evidence, and (5) properly consider whether the combination of plaintiff's impairments preclude sustained work activity. (Doc. 11 at 10-22). Plaintiff argues that this case should be remanded for a computation of benefits under the "credit-as-true" doctrine. *Id.* at 25. The Court will now consider each of these arguments.

### A.  The Listing Impairments Chosen Were Proper.

In step one of the evaluation, the ALJ found that "[t]here is no indication in the record that the claimant has engaged in any substantial gainful activity since February 1, 2007. (Tr. 12). In step two of the evaluation, the ALJ noted that "[t]he medical evidence indicates that the claimant has an affective disorder and marijuana abuse, which are severe impairments." *Id.* Having found a severe impairment, the ALJ moved to determining whether the plaintiff was disabled pursuant to the Listing of Impairments found at 20 C.F.R. pt. 404, subpt. P, App. 1 (2012).

In step three of the evaluation, the ALJ found that none of Plaintiff's impairments met or equaled any of the medical criteria for impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17). The ALJ compared Plaintiff's impairments to the listings in sections 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders). (Tr. 13). In order for a claimant to be found disabled in step three under 12.04, the claimant must demonstrate that he or she can satisfy the following requirements:

> 12.04 Affective Disorders: Characterized by a disturbance of mood,

- 5 -

    accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

    The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
  1. Depressive syndrome characterized by at least four of the following:
    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions or paranoid thinking; or
  2. Manic syndrome characterized by at least three of the following:
    a. Hyperactivity; or
    b. Pressure of speech; or
    c. Flight of ideas; or
    d. Inflated self-esteem; or
    e. Decreased need for sleep; or
    f. Easy distractibility; or
    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
    h. Hallucinations, delusions or paranoid thinking;

Or

  3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

    And

B. Resulting in at least two of the following:
  1. Marked restriction of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or
  4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
  1. Repeated episodes of decompensation, each of extended duration; or
  2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
  3. Current history of 1 or more years' inability to function outside a highly

supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, App. 1, (pt. A, 12.04).

The ALJ found that Plaintiff, although impaired, did not meet or equal this listing. (Tr. 12). In making that determination, the ALJ focused on the B criteria. (Tr. 15). Specifically, the ALJ found that Plaintiff had mild, mild to moderate, or moderate difficulties in the four B categories. *Id.* The ALJ based this finding on an examination of Plaintiff's daily activity testimony and the medical records presented. The ALJ also noted that Plaintiff did not meet any of the C criteria. (Tr. 16). Additionally, because the evidence regarding Plaintiff's marijuana use was conflicting, the ALJ determined that Plaintiff did not meet or equal listing 12.09. (Tr. 15).

Plaintiff argues that while listing 12.04 is the correct listing for evaluating depressive disorder, it is not the correct listing for Intermittent Explosive Disorder. Plaintiff contends that listing 12.08 (Personality Disorder) applies to him. (Doc. 11 at 10). Plaintiff argues that had the ALJ applied the appropriate listing, Plaintiff's impairments would have met or equaled said listing. *Id.* Plaintiff writes in his reply that "an assumption that Mr. Morris's *affective disorder* does not result in marked limitation in social functioning or sustaining concentration, persistence, or pace does not mean that the *explosive disorder* does not result in marked limitation in social functioning or marked limitation in sustaining concentration, persistence, or pace." (Doc. 18 at 2).

Plaintiff further contends that he meets five of the six Section A behavior criteria for listing 12.08 (specifically, 1 - seclusiveness, 2 - pathologically inappropriate suspiciousness or hostility, 4 - persistent disturbances of mood or affect, 5 - pathological dependence, 6 - intense and unstable interpersonal relationships and impulsive and damaging behavior) and three of the Section B criteria (specifically 2 - maintaining social functioning, 3 - maintaining concentration, and 4 - repeated episodes of decompensation). (Doc. 11 at 12-14). Plaintiff argues that the evidence supports a positive finding for each Section A and each Section B criterion. *Id.*

- 7 -

Defendant responds that the ALJ's failure to apply 12.08 is nonmaterial because the B criteria for both 12.04 and 12.08 are identical. (Doc. 12 at 15). Specifically, the Section B criteria for 12.08 read:

> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, App. 1, (pt. A, 12.08). Comparing these criteria with those set forth above for listing 12.04, it is clear that the B criteria for listing 12.08 are identical to the B criteria in listing 12.04. It follows that if Plaintiff could not satisfy the B criteria for 12.04, then Plaintiff would not meet the B criteria for 12.08 either.

The ALJ relied on substantial evidence in choosing which listings to apply, but even if the ALJ should have applied listing 12.08 rather than 12.04, that difference in listing would not undermine the validity of the ALJ's determination. The ALJ correctly relied on Dr. Garland's Psychiatric Review Technique in choosing the appropriate listings. A review of Dr. Garland's report indicates that Plaintiff's disorders should be characterized under 12.04 and 12.09. (Tr. 311). Because no other physician opined that listing 12.08 should be used, the ALJ relied on substantial uncontroverted medical evidence in the record in choosing the correct listed impairment. (Tr. 381-383) The listing, therefore, was chosen correctly.

Because the ALJ analyzed B criteria that are identical in both listings, the ALJ's determination that the disorder was not severe enough to qualify the plaintiff for presumptive disability would have been the same. Even if the ALJ should have applied listing 12.04 instead of listing 12.08, the ALJ would have reached the same conclusion based on his findings. Thus, even if the choice of listing could constitute an error, it would not "negate the validity of the ALJ's ultimate conclusion" and would therefore be harmless error. *Batson*, 359 F.3d at 1197.

**B. The ALJ Properly Rejected Plaintiff's Subjective Testimony**

In deciding whether to accept subjective complaints, the ALJ must perform the analysis adopted in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). Under *Cotton*, a plaintiff

- 8 -

who bases disability on subjective complaints must produce objective medical evidence of an underlying impairment (but not of the pain or fatigue) and must show that the impairment or combination of impairments reasonably could "produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). The latter prong of the test does not require evidence of a causal relationship between the medically determinable impairment and the alleged symptom or that the impairment could reasonably be expected to produce the severity of symptom alleged. *Id.* at 1282.

If a plaintiff meets the *Cotton* test, and no evidence shows malingering, in order to reject that plaintiff's testimony regarding the severity of symptoms, the ALJ must specifically state clear and convincing reasons and specify which symptom testimony is not credible and what facts support that conclusion. *Id.* at 1284. In doing so, the ALJ may consider a plaintiff's reputation for truthfulness or untruthfulness; any prior inconsistent or less than candid statements; unexplained or inadequately explained failure to seek or follow a course of treatment; and plaintiff's daily activities. *Id.* The ALJ must also consider a plaintiff's work record; observations regarding the nature, onset, duration and frequency of symptoms by treating and examining physicians; triggering and aggravating factors; and functional restrictions and symptoms. *Id.*

Here, the record is lacking in objective medical evidence that corroborates Plaintiff's subjective complaint reporting. (Tr. 14). The ALJ noted that Plaintiff's mental status examinations at Terros Behavioral Health "disclose[d] few significant objective findings" and returned results that were "within normal limits."[2] *Id.* For example, in a "Client Psychiatric Progress Note," dated August 7, 2008, Mr. Mayorga noted that Plaintiff had a "good" appearance; "normal" alertness; "good" eye contact; "normal" motor control; "appropriate" affect; "variable" speech in regards to quantity, rate, and amplitude; "logical" thought associations; "unremarkable" stream of thought; "non-psychotic" thought content; "fair" concentration, intelligence, insight, and judgement; "intact" memory; "normal"

---

[2] These tests were performed by Mr. Roger Mayorga, a Nurse Practitioner.

1 perception; and, finally, Mr. Mayorga noted that Plaintiff had no intent to harm himself or
2 others. (Tr. 350-351). In fact, the only aspects of this report that appear to differ from the
3 norm are the subjective aspects of "client comments" and "mood." (Tr. 350).

4     Additionally, Dr. Motoike's report does contain evidence that Plaintiff scored poorly
5 on the memory, arithmetic, and proverbs sections of a Folstein Mental Status Exam. (Tr. 382-
6 383). However, Plaintiffs results on that exam led Dr. Motoike to conclude that Plaintiff "is
7 estimated to function in the average or below average range of intelligence. His attention and
8 short-term memory appear to be fair to poor." (Tr. 383). Beyond this evidence of average to
9 below average intelligence and fair to poor memory and attention, Dr. Motoike's report
10 contains little other objective medical evidence corroborating Plaintiff's testimony; in fact,
11 Dr. Motoike's report seems to contradict Plaintiff's later testimony. (Tr. 383).

12     Finally, Dr. Garland's report appears entirely devoid of corroborating objective
13 medical evidence. (Tr. 311-323). The Doctor's Psychiatric Review Technique contains a
14 section on each page where the reviewing physician is asked to list "[p]ertinent symptoms,
15 signs, and laboratory findings that substantiate the presence of this impairment" (Tr. 312-
16 320). Each of these sections was left blank in Dr. Garland's review. *Id.* While the Court is
17 aware that Dr. Garland based his analysis on the findings of other physicians, the fact that
18 Dr. Garland did not find any corroborating objective medical evidence only strengthens the
19 proposition that little, if any, exists in the record.

20     The record appears to lack sufficient corroborating objective medical evidence. But,
21 even assuming Plaintiff satisfies the *Cotton* requirements, the ALJ gave clear and convincing
22 reasons for rejecting Plaintiff's subjective symptom testimony. The ALJ noted that Plaintiff
23 had made conflicting assertions in his statements to various medical professionals, as well
24 as during his testimony directly to the ALJ. *Id.* Specifically, Plaintiff gave conflicting
25 answers regarding his educational background, his criminal background, and his drug use.
26 (Tr. 15). Plaintiff made differing statements to Nurse Practioner Mayorga, Dr. Motoike, and
27 the ALJ. *Id.*

28     No medical professional asserted that Mr. Morris was malingering. However, the ALJ

- 10 -

1. noted that Plaintiff's subjective reports were conflicting and not in line with Plaintiff's own
2. testimony regarding his day-to-day activities. (Tr. 15-16). For example, the ALJ noted that
3. the Plaintiff testified that he had not worked since February 1, 2007. (Tr. 32). Plaintiff had
4. earlier asserted, in February of 2008, that he was engaged in day labor at the time that his
5. statement was made. (Tr. 289, 292, 294). Plaintiff also indicated at various times that he had
6. completed part of high school and did not have a GED, that he had graduated high school and
7. earned a diploma, and that he had completed only part of high school and had earned a GED.
8. *Compare* (Tr. 380)("[Plaintiff] reported completing 10th grade, contrary to the Core
9. Assessment, which states that he completed high school. He denied getting a GED") *with* (Tr.
10. 290)("GOT MY HIGH SCHOOL DIPLOMA") *and with* (Tr. 31)("The highest grade was
11. the ninth grade").

12. Furthermore, the ALJ noted that Plaintiff made inconsistent statements regarding his
13. use of marijuana and at least one physician indicated belief that Plaintiff was minimizing
14. drug use reporting. (Doc. 15). Finally, the ALJ noted that Plaintiff's allegations regarding
15. his impairment were inconsistent with the record. *Id.* Specifically, although Plaintiff testified
16. that "he has anger outbursts and mood swings" Plaintiff also testified that "he spends two to
17. three hours every few days with his children, ages five years and eight months old . . . he is
18. currently living with friends . . . [had] previously lived with his girlfriend . . . [and] he visits
19. his mother every few days." *Id.* Additionally, the ALJ noted that although the Plaintiff
20. testified that "he has memory and concentration problems" this conflicts with Terros records
21. that "indicate [Plaintiff's] memory in [sic] intact" and Plaintiff's own testimony that "he
22. reads on a daily basis (exhibit 5E), and . . . he plays games on a Play Station approximately
23. four to five hours a day." *Id.*

24. The reasons set forth by the ALJ for determining Plaintiff incredible are "clear and
25. convincing." Therefore, even if there was objective evidence, the ALJ properly found that
26. Plaintiff was incredible and discounted his testimony.

27. **C. The ALJ Properly Rejected Third Party Testimony**
28. The ALJ properly rejected the third party function report in this case. The ALJ

- 11 -

justified the rejection of Ms. Jacquline Laster's report by stating that:

> [T]his report is essentially the same as the report of the claimant with regard to his daily activities (exhibit 5E). Since the [ALJ] has found the claimant's allegations are not wholly credible, the statements of Ms. Laster are unpersuasive. In addition, any determination of the claimant's ability to perform work related activities must be supported by the medical evidence of record.

(Tr. 17). In order to properly discount third party testimony, the ALJ must give "specific reasons germane to each witness." *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). In *Valentine v. Commissioner of the Social Security Administration*, 574 F.3d 685, the ALJ rejected the testimony of the plaintiff's wife because her testimony was "similar to [plaintiff's] own subjective complaints" which the ALJ had already found incredible. *Valentine*, 574 F.3d at 694. The 9th Circuit found that this kind of similarity was a germane reason for rejecting the testimony. *Id.* Because the legal standard of *Valentine* applies here, the ALJ properly rejected the third party testimony.

### D. The ALJ Properly Weighed Nurse Practitioner Mayorga's Opinions

The ALJ discounted Mr. Mayorga's opinion because it was not supported by the evidence of record and because of Mr. Mayorga's reliance on Plaintiff's subjective reporting. (Tr. 14). The ALJ noted in his determination that Mr. Mayorga "opines the claimant has marked, severe and/or extreme limitations in his ability to function and is unable to work." (Tr. 14). But the ALJ indicated that he would "not give great probative weight to the opinions expressed by Mr. Mayorga since the overall evidence, including those records of Mr. Mayorga, does not support such excessive restrictions." (Tr. 14).

Plaintiff argues that discounting Mr. Mayorga's opinion was improper, and insists that in order for an ALJ to "reject treating source opinion evidence in favor of non-examining medical source opinion evidence, there must citation [sic] to an 'abundance' of evidence to substantiate the conclusion." (Doc. 11 at 15). It is true that an ALJ must have substantial evidence to reject an examining or treating physician's opinion in favor of a non-examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). However, Mr. Mayorga, as a Nurse Practitioner, cannot be considered a treating or examining *physician*.

- 12 -

An ALJ may rely only on an "Acceptable Medical Source" in making medical determinations. 20 C.F.R. § 404.1513. Mr. Mayorga, as a Nurse Practitioner, does not meet the criteria to be considered an "Acceptable Medical Source," but, instead, is considered an "Other Source." *Id.* at § 404.1512(d)(1). Other sources, even when deemed treating sources, can be rejected so long as the reasons for rejecting that opinion are "germane to" that source. *De Harrera v. Astrue*, 372 Fed. Appx, 771, 773 (9th Cir. 2010) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)). The ALJ discounted Mr. Mayorga's opinion evidence for the following reasons: the testimony of Plaintiff; the low amount of "significant objective findings" in Mr. Mayorga's mental status examinations of Plaintiff; and reports from an examining and non-examining physician that conflicted with Mr. Mayorga's opinion evidence. (Tr. 15-16). All of these reasons are germane to Mr. Mayorga's opinion and are therefore acceptable reasons for rejecting his opinion.

**E. The ALJ Did Not Err in Finding the Plaintiff Capable of Sustained Work**

Once an ALJ has determined that a claimant does not have an impairment that meets or equals a listed impairment, the ALJ makes a Residual Functional Capacity (RFC) assessment. 20 C.F.R. § 404.1520(e). In making an RFC assessment, the ALJ considers "all relevant evidence" in an attempt to determine how a claimant's impairment may affect what a claimant can do in a work setting. 20 C.F.R. § 404.1545(a). The ALJ must consider all potential impairments when making an RFC assessment. *Id.*

Plaintiff argues that the ALJ failed to properly make accommodations for Plaintiff's limitations in the RFC assessment. (Doc. 11 at 24-25). Plaintiff argues that the ALJ's finding of "moderate difficulties in maintaining social functioning" does not square with the ALJ's later assertion in his RFC assessment that Plaintiff can "respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." (Tr. 18). Plaintiff further argues that the "treating and consulting physicians found that the personality disorder and explosive disorder interferes [sic] significantly with the ability to respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." (Doc 18 at 4). Plaintiff asserts that the ALJ's failure to make

1  accommodations, after finding moderate difficulties, constitutes significant error. (Doc. 11
2  at 25). Plaintiff argues that this error renders the RFC "legally deficient" and requests that
3  the matter be remanded for a computation of benefits on this basis. *Id.*

4  In making his RFC, the ALJ noted that:

> The limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. The mental residual functional capacity assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad cateogires found in paragraphs B and C of the adult mental disoprders listings in section 12.00 of the Listing of Impairments (Social Security Ruling 96-8p). As such, the undersigned has translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

17 (Tr. 16). In translating these findings into work-related functions, the ALJ expressly states,
18 "[i]n determining the plaintiff's residual functional capacity, the [ALJ] has given significant
19 weight to the opinions expressed by the State agency reviewing consultants who found
20 [Plaintiff] could perform competitive remunerative, unskilled work on a sustained basis." (Tr.
21 17). Dr. Garland's Psychiatric Review Technique concludes by stating that "[plaintiff] should
22 be able to meet the minimal demands of unskilled work, especially in a setting with minimal
23 public contact, by 1/27/09." (Tr. 323). Further, Dr. Garland's Mental Residual Functional
24 Capacity Assessment concludes that "[plaintiff] should be able to meet the basic mental
25 demands of competitive, remunerative, unskilled work on a sustained basis, particularly in
26 settings of low social contact." (Tr. 327). It is important to note that Dr. Garland is the only
27 physician who completed an RFC assessment. Dr. Motoike noted that Plaintiff may have
28 moderate or moderate to marked restrictions in some work-related areas, but at no point did

1  Dr. Motoike indicate that Plaintiff was incapable of sustaining work. *See* (Tr. 384).

2      Because the ALJ relied on the medical opinion of an acceptable medical source, as
3  well as other evidence of record, in translating the "B" and "C" criteria into an RFC,
4  substantial evidence supports the finding that Plaintiff is fit for certain types of work.
5  Plaintiff contends that the ALJ "ignored the restrictions attested to by Mr. Morris, Ms. Laster,
6  Mr. Mayorga, Dr. Motoike and Dr. Garland." (Doc. 11 at 25). The ALJ, however, need not
7  give all evidence equal weight when making an RFC assessment. *Batson*, 359 F.3d at 1197.
8  Here, the ALJ expressly indicated which evidence he gave more weight to, and as mentioned
9  above, the ALJ stated clear and convincing reasons for discounting other evidence. *See supra*
10 pp. 9-13. Dr. Garland's report and other evidence of record represent substantial evidence
11 to support the ALJ's Residual Functional Capacity assessment. Because this Court can only
12 reverse the judgment of an ALJ upon a lack of substantial evidence, the Court upholds the
13 ALJ's RFC assessment.

**IV. CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** affirming the Commissioner's denial of benefits.

DATED this 16th day of July, 2012.

James A. Teilborg
United States District Judge